Good morning. Good morning, Your Honors, and may it please the Court, Eric Levinred, and I'm privileged to represent the Appellant Multi-Time Machines in this action. Could you keep your voice up, sir? Sometimes it's difficult to hear you. Sir. No, you're doing fine. To make matters worse, we had problems with the audio system yesterday, so. I will absolutely try to talk louder. Thank you. Your Honors, this case is about exactly how confusing an Internet retailer can make its search results page that's presented to a potential customer while remaining immune from liability as a matter of law for trademark infringement. This case, Your Honors, is not about whether Amazon's search results page could conceivably be found by a jury not to create a reasonable likelihood of confusion. This case is about whether that issue should have gone to a jury in the first place. And I would submit, Your Honors, that on the facts presented in this case, where a consumer goes to an online retailer, a company that, by its own admission, holds itself out of the world's biggest marketplace or whatever it is, where customers go to that website to buy products, not to seek information, and where the consumer searches for a particular product by entering the trademark by which that product is known into the search engine, and where that trademark is then displayed prominently on the top of the results page no less than three separate times above a bar that says, Results 1 to 20 or 48 or whatever it happens to be on that day. And where the products that are displayed as results of that consumer's search are, in fact, not the product searched for, and there's no indication that alternative choices are being offered. Well, it's obvious that they're different brands, aren't they? Isn't it? Your Honor, it's not necessarily obvious. Well, I mean, it says Luminox, Chase Dower, Luminox, Tawatek. I mean, they're listed here. Your Honor, it does say Luminox. That's true. But a consumer, given the overall context of the page where the MTM trademark is displayed prominently at the top of the page, could easily conclude that Luminox is perhaps a sub-brand of MTM. Why would you conclude that? I mean, I don't understand why anybody, if you say, I want Coke, and they say there's Pepsi, why you would think it's not Pepsi? Because we're not talking Coke and Pepsi here, Your Honor. We're talking watches that look similar, that are in similar price points. And, Your Honor, when you – and the issue isn't whether it actually is confusing or not, just whether it goes to the jury. And, Your Honor, the Ninth Circuit has said that when you talk about the likelihood of confusion, the likelihood of confusion will ultimately turn on what the consumer saw on the screen and reasonably believed, given the context. And I think that's important, Your Honor. What should a merchant do if – you remember the Saturday Night Live skit? John Belushi and Dan Aykroyd, the guy goes into the diner and he says, I want Coke. And the guy goes, no Coke, Pepsi. Remember that, the no Coke, Pepsi? Your Honor. Yeah, okay. Is there a trademark infringement if you go into a diner and you say, I want Coke, and the guy says, no Coke, Pepsi? No, Your Honor, because the guy says no Coke. Okay, so if they say, I want a Coke, and the guy says, we only have Pepsi, is that a trademark infringement? Probably not, Your Honor, because they're indicating to the customer that they don't have the product requested, and that's not what happened. Well, if you say, I want MTM, and they say, basically, we just have Luminox and these others, how's that different? Because, Your Honor, that's not what they do. They don't say, we don't have MTM, we only have Luminox and these others. Is that what this whole case turns on, that when you ask for MTM and they tell you we have all these other brands, your thing rises and falls, your case rises and falls on not saying we don't have MTM? Your Honor, if they don't say we don't have MTM, or if they don't otherwise indicate that they're essentially showing, not the products that the consumer searched for, but other alternative products, the case may not rise and fall on that, but it should go to the jury. It should not have been determined on summary judgment, Your Honor. May I ask you a question, Mr. Levinrath? To what extent do we have to consider the factors, all eight of them, mentioned in Sleekcraft to determine whether there was likelihood of confusion? Question number one, and I would like your opinion, your position, as to which of those factors favor your client, which of those factors are irrelevant, and which of those factors favor Amazon? The court should consider the eight Sleekcraft factors, and by the way, typically consideration of likelihood of confusion by virtue of consideration of the eight Sleekcraft factors is a question of fact, which typically is not suitable for disposition by summary judgment, but I would point out, Your Honor, that in the context of Internet results search pages, there's an additional factor that under the Ninth Circuit authority, as is made clear in the Playboy Enterprises case, and I believe the most important factor, which is the labeling of the results, Your Honor, and the labeling, or in this case, the absence of labeling. In the network automation case— The labeling of the result of an MTM special ops search on the Amazon page says, Results from, quote, MTM special ops search, unquote, right? That's correct. This is different from what Overstock.com and Buy.com answer to the same search inquiry. They answer, No results from your search. Absolutely, Your Honor. So there's an element of candor in Overstock.com and Buy.com absent from Amazon.com, is there not? There absolutely is, Your Honor, and I would submit that under the Ninth Circuit precedent— Now, to which of those elements of sleek craft does this lack of candor go? Neither, Your Honor. Well, there is a sort of a nuance on that. In one sense, neither, because the network automation case talks about labeling or absent labeling as an additional relevant factor in this context, but the Playboy case, Your Honor, talks about the lack of candor, as Your Honor, I think, appropriately put it. Which case is that? The Playboy case. Yes. The Playboy case talks about the lack of candor and discusses that element in the— Intent is one of the elements. Defendant's intent is, I believe, the seventh element in sleek craft. That is correct. That is why lack of candor is relevant in consideration of whether there's a triable issue of fact. That is correct, Your Honor. It goes to intent. And I would also point out, though, that, you know, the sleek craft factors, and it's well established that they're not exhaustive, and in this context, the courts look at labeling or absence of labeling, and I think in the network automation case, that's the most illustrative case because what the court looked at was the fact—and these cases involved keyed advertising, Your Honors, where a consumer—and the way that works in sort of a simplistic fashion is the consumer enters a trademark into the search engine and the algorithm is triggered so that when a consumer enters that trademark, the search engine sells advertising to competitors who then present linked advertising. And the court noted in that case in reversing the district court's preliminary injunction— But there's another element of the sleek craft list which I'd like your opinion on. One is evidence of actual confusion. If I remember the evidence produced by Amazon, they say that persons—4,000 persons seeking MTS special ops, none bought a watch on the day that they sought that search result, so that therefore there was no confusion because they just didn't buy watches at all. How do you meet that? You don't have to show actual confusion in order to establish a reasonable likelihood of confusion. That's clear. So the fact that there may or may not have been actual confusion doesn't mean that we lose as a matter of law. Second of all, I don't believe that the evidence establishes an absence of actual confusion as Amazon argued and as the district court accepted because there was— First of all, there are flaws in the methodology. They only look at sales that took place on a certain given day. And even based on the evidence submitted by Amazon, there was at least one purchase of a Chase Dura watch, I believe, based on an MTM search, and that certainly could— What does that prove? I mean, okay, so what? So they did that. What does that prove? Well, it proves that— It doesn't prove they were confused. It proves they bought that watch. It doesn't prove that they were confused, but it proves that they may have been confused. They may have bought it thinking it was an MTM watch. Well, they may have, maybe have not. Do you have anything from anybody who says, gee, I bought a Luminex and I thought I was getting an MTM? No, and typically, Your Honor, typically plaintiffs in trademark cases don't have that smoking gun of actual confusion, and that's not fatal. That doesn't mean that you lose on summary judgment, and it shouldn't mean that because that would be an almost impossible bar to overcome. But I would point out that even if you take it on face value, Your Honors, in this context, in the context of initial interest confusion, which, you know, has been somewhat criticized and limited but remains an appropriately viable doctrine, if accompanied by the requirement of labeling so that it's not overextended, as Judge Berzon suggested should be the case in her concurring opinion, that in that kind of confusion, you don't need sales. So their evidence of searches, of comparing searches with sales of watches is flawed because it doesn't detect initial interest confusion, Your Honor. Judge Berzon's hypothetical is not applicable in this case because in Judge Berzon's hypothetical, there was a Calvin Klein shirt in Macy's. Here, there was no MTM special ops available from Amazon. Absolutely, Your Honor, and I think respect for the judgery court's opinion in finding summary judgment, Your Honor, was somewhat flawed in finding that this case falls squarely within Judge Berzon's hypothetical for the exact reason that Your Honor has pointed out. In this case, Amazon does not carry MTM watches. In that case, Macy's carried the product that was being requested. So if Amazon wants to avoid liability, as far as you see it, what do they have to do if someone searches for an MTM watch and they don't carry an MTM watch? Well, if they want immunity from liability as a matter of law, if they want to get summary judgment, they have to have some kind of labeling. It could be putting a statement on saying we do not carry MTM watches. Here are some alternatives. So they can't say we just carry Pepsi. They have to say no Coke Pepsi is what you're saying. That's what I'm saying, Your Honor. Even if it's obvious that all they carry is Pepsi. Well, I don't think it's obvious, Your Honor, based on the context of the screen. Well, let me ask you about that. Suppose we look at the screen and we conclude that anybody who can read English can see that they carry Luminox and Talatec. And if it looks obvious to us, do we – you're out, right? No, Your Honor, because it might look obvious to a judge on the Ninth Circuit or it might look obvious to me. But when you look at the whole context where a consumer enters MTM watches on a – Let me ask you again. You don't have any consumer who made that mistake? We don't have evidence of that consumer. That doesn't mean we don't get to trial on that. You don't need – Well, at summary judgment, you have to put up or shut up. I mean, you have nobody at summary judgment who can say I looked for this watch and I was confused and I got that watch. Your Honor, you don't need actual confusion to survive summary judgment in a trademark infringement case. And, Your Honor, as I notice, I have 30 seconds left. I had wanted to reserve some time. You bet. Judge Quist has a question. Go ahead. My question follows Judge Silverman's points, and that is you put in MTM Special Ops, that comes up on the top, and then you see Luminox and all those others. But you don't see MTM Special Ops, so you're not really – I know your argument, but the other argument would be you're not really changing the intent of the person, the potential buyer, because he got on the site MTM Special Ops and he doesn't see any MTM Special Ops for sale. In other words, that potential buyer is diverted. That's correct. But then you get to the network automation case. The owner of the market must demonstrate likely confusion, not mere diversion. What do you do with that phrase? Your Honor, he's not mere. He might ultimately realize that the watch he's looking at is not an MTM watch, or he might not, given the context of the screen where there's no indicator from Amazon that – where there's no Coke, Pepsi, where there's no indicator that we don't carry MTM watches. Here's some other options, as other retailers do. You get to the end, and it's going to say, do you want to buy this Luminox watch? So it's a diversion you're talking about, isn't it, as distinguished from what another or maybe the same court said, the synchronome has to be confusion to the likely buyer. The likely buyer will not see the MTM watch when he hits that button and gets a Luminox watch, and he knows that. Your Honor, in the context of this, in the context of the screen that's presented, where you have MTM Special Ops watch displayed prominently on the top of the page, and then you have a list of watches that look very much like MTM watches, it would be perfectly reasonable for a consumer to conclude that Luminox is affiliated with MTM or a sub-brand of MTM, particularly in light of the fact that other retailers with which consumers might be somewhat familiar do say, we don't carry the product you're looking for. Consumers who are familiar with the Overstock model, which respectfully displays far more candor, seeing the Amazon results page, there's a likelihood, this is an issue, whether there's a likelihood that something that should at a minimum go to a jury, Your Honor. And I would point out, and I know I'm out of time, but I would point out, Your Honors, there was a case on all fours in the United Kingdom at the trial court level involving Lush Soaps. You're welcome, sir. Involving Lush Soaps, we submitted a letter bringing that case to the court's attention, Your Honor, where the United Kingdom trial judge on these exact same facts found that it was confusing when Amazon United Kingdom displayed other soaps without saying, we don't have Lush Soap. And I would submit, Your Honor, that if a United Kingdom trial judge can find this right or wrong, certainly a reasonable jury could find a similar likelihood of confusion and it should, at a minimum, have gone to a jury to decide. I respectfully submit that the United Kingdom would look at a United Kingdom company differently than it would look at Amazon, based upon just about everything that's happening in Europe right now. But anyway. Any further questions? Judge Baird, was there anything else? No, I don't think so. Okay. Thank you very much, Mr. Baird. For the appellee. Good morning, Your Honors. May it please the Court. My name is Mark Levy. I represent Amazon.com. It's not common. It's not what Overstock does. It's not what Bicom does. Why do you do it? Is that why Amazon is so much more successful? Your Honor, the issue, how Amazon You use common. How do you define common practice? Is there anyone else in this retail internet business that does what you do? Of course not. And there's nothing in the record that indicates that. You are singular in this practice. And there are two key, undisputed facts on this record that compel affirming summary judgment. Number one, the search results at issue in this case that the plaintiff contends are likely to cause confusion are all clearly labeled. Under network automation, this Court has held that context is critical and clear labeling can eliminate likelihood of confusion. In addition, under Tabari, and this is absolutely critical and also shows why the decision below should be affirmed, who is the relevant consumer looking at these clearly labeled search results? According to Tabari, the consumer for internet commerce is the reasonably prudent consumer accustomed to shopping online. That is absolutely critical. That reasonably prudent consumer knows the difference between the search query where it says MTM Special Ops at the top and the search results below, which as Judge Silverman noted doesn't include any reference to MTM Special Ops. Rather, it includes references to clearly labeled products from other brands. Coke, Pepsi, just like that. Key undisputed fact, under network automation and Tabari, summary judgment should be affirmed. But if there was any doubt about this, we have an additional undisputed fact which also shows why summary judgment should be affirmed. And that is the sales conversion data. That data confirms that consumers were, and in fact, reasonably prudent. That they, in fact, realized that they were not finding what they're looking for because the sales conversion rates of the consumers who were actually clicking on the results were... Mr. Levy, let me ask you a question based on some evidence in the record. One of the elements of sleek craft to determine whether there is initial confusion or the likelihood of initial confusion is the defendant's intent. You're the defendant in this case. There is evidence in the record at 174-182 that there were studies at Amazon with respect of telling consumers, users of the internet webpage, how you configured your algorithm, the BBS algorithm, to tell the consumer that what he was getting in the search result was not necessarily what he asked for, but what Amazon wanted to push for sales. And there was determination not to tell the users regarding the algorithm because there was a, quote, potential to hurt us. Folks can get touchy about us pushing the results we want to show and not what they asked for. Doesn't this show defendant's intent to not answer the search result question accurately the way that Overstock and Bicom does? What was he talking about? What was your man talking about? Right. And so... is an agnostic approach. And it is not going to, it does not, the whole concept on the approach, and this is all laid out in the record, in the declaration of Mr. Daniel Rose, who was part of the designer of the Amazon search engine, was that we do not want to presume anything about what consumers are looking for when they are putting in search terms. But you are assuming something. You're assuming their tastes. That's what the BBS is all about, isn't it? No. With respect, Your Honor, I think that's an inaccurate characterization. The behavioral-based search system in Amazon is designed to actually look at consumer behavior about what consumers do when they do certain searches and use that behavior to try to help future consumers find relevant results. And in fact, in this very case, the reason why the Chase, Durer, and Luminox watches come up is as a result of that behavioral-based search system. And you don't want to tell the user what you're doing because that will get in the way of shopping, right? Well, it gets in the way... I mean, that's your language, not mine. Well, Your Honor, it is designed to provide relevant results for consumers. That is the logic. Why don't you make it clear that there's no MTS Ops, just Luminox, no Coke, Pepsi? Your Honor, that is a question of remedy, not a question of life. The issue... Why is that? Because whether or not... The issue is whether the Amazon search results, as presented, create a life... Whether Amazon is required to provide some type of disclaimer or what kind of conduct it would have to do if liability were found is a question of remedy. The issue here is whether the search... Suppose we disagree with you about that. Suppose we think it bears on liability, then what? Well, Your Honor, it is... The disclaimer is not required to... Unless we say it is. Yeah, I was going to say, says who? Well... Who says it's not required? They say it is required. Okay, so who says it? You say it's not. Okay. It is required. But the evidence in this case shows that consumers are not being confused. That we can actually... That even though it's not there, that we know... We actually... How do we know that? We know that because we have actually done... We have a comparative analysis of the behavior of consumers searching for a product, a competitive product that Amazon does carry, the Luminox watch, compared to the behavior of consumers searching for a watch that Amazon does not carry. If consumers, in fact, were being duped, deceived, we would expect to see behavior from those consumers in terms of sales at least somewhere remotely comparable to the behavior for watches that Amazon does carry. Why? Who says that? Well... Is that what your expert witness says? No, Your Honor. Could reasonable people disagree with your assumptions and with the material which you profess as evidence? No, Your Honor. This isn't a case where... You know, one might expect in this case... Maybe, typically in a trademark case, you would see a survey to see how consumers would react to this. There is no survey in this case showing confusion. But what we do have in this case is something quite exceptional. We actually have the real-time data of the actual consumers. They realized they weren't finding what they were looking for. How do we know that? They search for MTM hops and these other things come up and then they don't make a purchase that day. Is that what you're referring to? That is correct. How do we know that they just weren't too expensive? Well, the issue, the limitation of the data... ...purposes. What are we comparing it to? We're comparing it to the very same data for searches for a watch that Amazon does carry and namely the Luminox watch. And so we've done an apples-to-apples comparison. You're saying when they search for MTM and this other stuff comes up, they don't buy that day. But if they search for Luminex, they do buy that day. That's correct. Exactly, Your Honor. And in fact, when you look at those percentage differences, it is order-of-magnitude difference. You've got 1.3% sales conversion ratio for the Luminox searches compared to a 0.06% rate, an order-of-magnitude difference 21 times less likely to buy anything in response to the search. It shows that consumers, for the most part, who search for MTM Special Ops on Amazon are, as Tabari says, reasonably prudent consumers who know the difference between the search that they're not getting what they're looking for. Could you tell us, please, with respect of the sleek craft elements or factors, all eight of them, if you can, which you consider benefit you, which are irrelevant, and which benefit your opponent?  the analysis that should apply here is very comparable to the analysis that the Court applied in the network automation case, where it found that the most relevant factors in this situation of presentation of Internet search results are, one, the labeling and the appearance of the webpage, two, the degree of care exercised by consumers, three, evidence of actual confusion, and, four, the strength of the market. And what's the fourth? The strength of the market issue. We submit that, as I opened with, that the clear labeling of the search results, where there is no use of the trademark whatsoever, combined with the heightened degree of... But you do use the trademark. It says, Search results for MTM Special Ops. It's the top of the page, and then it's the bottom of the page also. Your Honor, the trademark is only used in the search query area of the webpage. The mark does not appear at all in the search results. That's the difference between network automation and this case. In the network automation, both products were on the page. In network automation, Your Honor, it is a different case. And if you look, there was an issue that the Court found that should go to the Court, because the keyword ad was not clearly labeled as a network automation ad. This case, all of the advertisements for the watches are all precisely clearly labeled. They couldn't be more clearly labeled. Luminox watch. Chase-Durrer watch. He says that they're not clearly labeled because they could be subcategories of MTM watches. In other words, MTM watches. Then you see Luminox, and you see these other names that I don't remember. And you keep talking about things being clear, heightened degree, and all that. But why shouldn't that then go to a jury? Who would be the better person to make a decision regarding a lot of your argument about what is clear, what is understandable, what is meant, whether it's a subcategory? Who would be a better person to do that? That's why we have juries, isn't it? Your Honor, if there is no evidence that you can represent the jurors, I think we need to do that. I think it would be a good idea to use Judge Berzon's example. And the fact that Amazon does... You don't like my distinguishment of the judge? No, let me explain why. In Judge Berzon's example, she went into Macy's to look for a Calvin Klein shirt. They said, Calvin Klein shirt is available, but there are also other shirts from Wombat Industries, right? All right. Here, you say... You don't say there are no MTM. There isn't an MTM. So the two are not the same. Actually, Your Honor, let me... I want to respond to you very precisely. And I'm going to read Judge Berzon's example. And you'll see why the fact that Amazon doesn't carry the watch is completely irrelevant. In... Judge Berzon... ...and never reaches the Calvin Klein section. It could not be said that Macy's had any print on Calvin Klein... But there was a Calvin Klein shirt in Macy's and there was no MTM on your site. But, Your Honor... ...is the Calvin Klein section. If we analogize that to this case, Your Honor, even if Amazon carried the MTM watches... Hypothetically, let's say MTM did carry the watches, but the watches didn't show up until page 2 of the search results. And page 1 is exactly as you see. It has... Amazon presents the Chase Durer watches, the Luminox watches. And let's say, consistent with Judge Berzon's example, the consumer is diverted, looks at the Luminox watch, and says, gee, I really like this watch. I think I'll buy it. Based on Judge Berzon's hypothetical and based on, I think, this court's reasoning in network automation, there is no infringement. It doesn't matter what's on page 2. It doesn't matter that the Calvin Klein collection is up on the fifth floor... I see we're out of time. Thank you very much. Thank you. Thank you. Mr. Levinrad, you're out of time too, but we'll give you two minutes in rebuttal. Thank you. Thank you, Your Honor. Your Honor, you know, Mr. Levy kept on talking about there is clear labeling here. Your Honor, there's not clear labeling here. If there was clear labeling here, the results page would clearly say, here are some other alternatives. Your Honor, this case is exactly like network automation and it shows exactly why this case should not have been disposed of by summary judgment. In network automation, the reason that the Ninth Circuit overturned the preliminary injunction is because in that case, Your Honor, there was clear labeling. The court noted that the keyed advertisements were in a separate section of the results page marked sponsored links. Your Honor, there is no such clear labeling here. In fact, what's really happening here is this case is on all fours with the keyed advertising cases. I didn't mean to interrupt your chain of thought. Your Honor, my chain of thought is this case is on all fours with the keyed advertising cases. The only distinction is that instead of selling the keyed advertising to third parties, Amazon uses the search terms, the trademark search terms, in this case MTM Special Ops, it uses it for itself to sell its own alternative products without telling the consumer that that's what it's doing. Under the Ninth Circuit precedent, which has always emphasized the need of candor, more candor, not less candor, clear labeling. Your Honor, I would submit that there was an absence of such clear labeling here. That's why I say this is not really a factual dispute. Either you're right that as a matter of law this labeling is not sufficient or it is sufficient. We know what the search page says and we either agree with you that the omission of we don't carry MTM Ops is fatal to them or we agree with you or we agree with them that you can tell what this is. It's either clearly labeled or it's not clearly labeled. Isn't that right? That's what you're saying, really. No, I think it is a factual dispute because, you know, look, we didn't move for summary judgment. Perhaps we could have cross-moved, but I think in the context of the page, you know, a reasonable jury should have the opportunity to look at that and to say, well, the MTM trademark is displayed three times on the top of the page. Well, there's no indicator as there is in the overstock.com results page that we don't carry this. So, you know, it is a question of fact. If there were a clear label saying we do not carry MTM watches, here are some alternatives to consider. In that sense, you know, I would say there isn't a factual dispute. There are cases where these trademark infringement cases or misuse cases are disposed of by summary judgment. It seems to me that you're arguing that there will never be a case that should be disposed of by summary judgment. Is that your position? Absolutely not, Your Honor. Thank you. A very interesting and well-argued case by both sides. We'll stand and recess in the cases submitted. Good morning.
judges: Quist, Silverman, Bea